# Exhibit 2

*Kinney v. Life Time, Inc., et al*
Exhibit to Notice of Removal

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID B. KINNEY,                                )
                                                )
      Plaintiff,                            )
                                                )
v.                                              )    Case No:
                                                )
LIFE TIME, INC.,                                )
LIFE TIME FITNESS, INC.,                        )
LTF REAL ESTATE CMBS II, LLC,                   )
LTF CLUB OPERATIONS COMPANY, INC.               )
LIFE TIME DIGITAL, LLC,                         )
                                                )
      Defendants.                           )

## AFFIDAVIT

I, Brad Idelkope, having been duly sworn, state and depose that the statements set forth below are true, based upon my personal knowledge, and that I am competent to and would testify in accord with the statements if called to do so.

1.     My name is Brad Idelkope and I am Associate General Counsel for LTF CLUB OPERATIONS COMPANY, INC.

2.     LIFE TIME, INC. is and has at all times been a Minnesota corporation with its principal place of business in Minnesota. It was formerly known as LIFE TIME FITNESS, INC.

3.     Defendant LTF REAL ESTATE CMBS II, LLC, is and has at all times been a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware with its headquarters and principal place of business in Chanhassen, Minnesota. Its sole member is LTF Real Estate Holdings, LLC, which is and has at all times been a Delaware limited liability company with its headquarters and principal place of business in Chanhassen, Minnesota. The sole member of LTF Real Estate Holdings, LLC, is LTF Operations Holdings,

Inc., which is and has at all times been a Minnesota corporation with its headquarters and principal place of business in Chanhassen, Minnesota.

4.     Defendant LTF CLUB OPERATIONS COMPANY, INC. is and has at all times been a corporation duly organized and existing under and by virtue of the laws of the State of Minnesota, with its headquarters and principal place of business in Chanhassen, Minnesota.

5.     Defendant LIFE TIME DIGITAL, LLC, is and has at all times been a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware, with its headquarters and principal place of business in Chanhassen, Minnesota. The sole member of LIFE TIME DIGITAL, LLC, is LTF CLUB OPERATIONS COMPANY, INC.

6.     Defendants LTF CLUB OPERATIONS COMPANY, INC., LIFE TIME DIGITAL, LLC, and LTF REAL ESTATE CMBS II, LLC was first served with the initial pleading in the state court action on March 26, 2025. 7.

7.     Prior to Plaintiff filing his Complaint in this action, counsel on his behalf indicated in writing to LTF CLUB OPERATIONS COMPANY, INC., through its insurance adjuster, that Plaintiff's damages were $122,026.69. The correspondence dated October 7, 2024 as **Exhibit A** is a true and correct copy of that correspondence.

*Affiant Further Sayeth Not*

_____
Brad Idelkope

Subscribed and sworn to before me this 9th day of April, 2025

_____
Notary Public

NISSA A. MUNGER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2030

Document Prepared by:
Michael L. Hahn
**LITCHFIELD CAVO LLP**
303 West Madison Street, Suite 300
Chicago, IL 60606
hahn@litchfieldcavo.com
(312) 781-6569

# Exhibit A

*Kinney v. Life Time, Inc., et al*
Exhibit to Affidavit in Support of Notice of Removal



INFO@MCCREADYLAW.COM
📞 (312) 553-4446   📠 (773) 373-237...
200 W. Madison St. Suite 2400 Chicago, IL 60606

**October 7, 2024**

**VIA CERTIFIED MAIL**
**VIA EMAIL:** jeff_champagne@corvel.com
CorVel Corporation
Jeff Champagne
PO Box 4400
Lisle, IL 60532

|  |  |  |
|---|---|---|
| **RE:** | **Your Insured:** | **Life Time** |
|  | **My Client:** | **Dave Kinney** |
|  | **Date of Loss:** | **May 3, 2023** |
|  | **Claim No.:** | **1486-GL-23-0300446-001** |

Dear Mr. Champagne and All Insurance Company Decision-Makers:

Your records should reflect that our firm represents Dave Kinney ("**Mr. Kinney**" or "**our client**") regarding his respective legal interests as to an incident that occurred on May 3, 2023, involving Life Time ("**Life Time**" or "**your insured**").

Our firm is currently in a position to resolve our client's claims and, in connection therewith, submits the following information and documentation in a good-faith effort to avoid the cost and time-consuming nature of filing a formal complaint with the court.

Pursuant to Il. R. Evid. Rule 408, the information and materials accompanying this letter are for settlement purposes only and may not be used at trial unless obtained through the legal process.

We expect that you will provide our firm with a list of any additional items you need in order to properly and fully evaluate this settlement demand within **30 business days of the date of this letter**. We will make a good-faith effort to respond to any requests you make for additional information regarding this demand. **We also ask that this demand be immediately forwarded to all insurance company decision-makers and, of course, the insured policyholder.**

## 1. FACTS & LIABILITY

On May 3, 2023, Mr. Kinney was a lawful invitee upon the commercial premises located at 16333 South La Grange Rd in Orland Park, Cook County, Illinois (the "**premises**" or "**subject**

CorVel Corporation
Jeff Champagne
Page 2

premises"). The subject premises was owned and operated by Life Time. As Mr. Kinney was swimming in the pool, Mr. Kinney touched the wall and came up to breathe when a cloud of gas took his breath away. Mr. Kinney attempted to get out of the pool but was unable to and went under the water to the stairs. Mr. Kinney got out of the pool and laid down. Mr. Kinney could hardly breathe and it felt like he had sandpaper in his lungs. Other people at the pool said there was a strong smell of chemicals. Mr. Kinney's encounter with the dangerous condition on the subject premises resulted in his suffering serious injuries to his throat and lungs.

**The conditions for establishing liability, in this case, are clear**. Life Time, as the owner/operator of the subject premises, was at all times relevant to this matter subject to the duty of care owed by a premises owner/operator to lawful invitees under Illinois law. In breaching its duty, directly and/or by and through the acts/omissions of its employees/agents, Life Time is liable for the personal injuries and other damages Mr. Kinney sustained upon the subject premises on May 3, 2023, as set forth herein.

**Premises Liability (Duty of Care Owed to Business Patrons)**

While Illinois law provides that an owner or occupier of land has the duty to exercise ordinary care with respect to a person rightly on the land regardless of whether that person is an invitee or licensee, the duty owed to invitees and licensees under the Premises Liability Act is reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them. 740 Ill. Comp. Stat. Ann. 130/2. Still, the common law provides the special relationship between the owner/operator of a commercial business premises and a business patron/invitee gives rise to an affirmative duty on the part of the premises owner to aid or protect its business patrons against unreasonable risk of physical harm. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057-58 (Ill. 2006). The owner or possessor of property is liable to invitees and licensees if the owner or possessor knows or should know of a dangerous condition, realizes or should realize that the condition involves an unreasonable risk of injury to invitees, knows or should know that invitees are not likely to discover or realize the danger or to protect themselves from it, and fails to exercise reasonable care to protect them from the danger; that is, an owner or possessor of land owes its ees a common-law duty of reasonable care to maintain its premises in a reasonably safe dition, but no legal duty arises unless the harm is reasonably foreseeable. *Gregory v. Beazer*, 384 Ill. App. 3d 178, 892 N.E.2d 563 (2008); *Higgins v. White Sox Baseball Club, Inc.*, 787 .2d 1125 (7th Cir. 1986).

One who owns or is in charge of premises owes invitees and licensees thereon a duty to warn them of any danger of which he or she knows or should know and of which the invitees or licensees are not aware. *Geraghty v. Burr Oak Lanes*, 5 Ill. 2d 153, 125 N.E.2d 47 (1955). The duty to warn of

2

CorVel Corporation
Jeff Champagne
Page 3

a particular hazard will be imposed only when the defendant has unequal knowledge, either actual or constructive, of the hazard and only if the defendant knows or should know that an injury may occur if no warning is given. *Hodges v. St. Clair Cnty.*, 263 Ill. App. 3d 490, 636 N.E.2d 67 (1994). Therefore, the duty to warn against a hazard exists only where the owner should reasonably anticipate injury to its patrons who are present on the premises and who are generally exercising reasonable care for their own safety. *Id.*

This is in line with long-standing Illinois law requiring an owner/occupant must use reasonable care to see that the portions of its premises that are devoted to its business purposes are reasonably safe for its patrons, and placing liability upon the owner/occupant where it negligently allows a dangerous condition to exist that places its patrons' safety at risk. *Fitz Simons v. Nat'l Tea Co.*, 29 Ill. App. 2d 306, 316, 173 N.E.2d 534, 539-40 (Ill. App. Ct. 1961) ("An invitation to enter premises for business purposes carries with it the duty towards the invitee to provide reasonably safe means of ingress and egress, and, ... it is immaterial whether the defendant had leased or had control of the [premises],—it is its duty to use reasonable care to make the entry reasonably safe for its business invitees.").

**Vicarious Liability**

With respect to the vicarious liability of an employer for the negligent acts of its agents/employees under respondeat superior, "[i]n determining whether a person is an agent or an independent contractor, the court's cardinal consideration is the right to control the manner of work performance, regardless of whether that right was actually exercised." *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1057, 946 N.E.2d 463, 471 (2011). Determination of whether a relationship of employer and employee, principal and agent, or owner and independent contractor exists depends upon such facts as the manner of hiring, the right to discharge, the manner and direction of servants, the right to terminate the relationship, and the character of the supervision of the work done. *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 44, 983 N.E.2d 414, 427. Liability can arise from negligence in training or supervising under both an agency and direct negligence theory. *Bruntjen* at ¶ 82, 18 N.E.3d at 240 (citing Restatement (Third) of Agency § 7.05 (2006)) ("A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent.").

Here, it is clear that **100% liability rests with Life Time**. Life Time was negligent when it failed to use reasonable care to keep the subject premises in a reasonably safe condition so as to prevent injury to invitees like Mr. Kinney. Life Time failed to use reasonable care to discover the unsafe condition created by the chemicals in the pool and failed to repair, replace, or give an adequate

3

CorVel Corporation
Jeff Champagne
Page 4

warning so as to prevent injuries to invitees as a result of the dangerous condition on the subject premises. Certainly, a jury will easily glean from the facts and circumstances leading to Mr. Kinney's injuries that Life Time knew or should have known that the dangerous condition upon its premises created a high risk of harm to invitees, and that had it exercised a modicum of reasonable, due care for which it had sole control, it could have prevented Mr. Kinney's encounter with the dangerous condition on May 3, 2023.

Again, in this instance, Life Time knew the dangerous condition on the subject premises was present and that the dangerous condition at issue existed for such a length of time that, had it exercised ordinary care, should have known of the condition and was therefore foreseeable so as to cause serious injury to invitees, namely Mr. Kinney. Life Time's negligence created an unsafe and dangerous environment that placed the well-being of invitees at serious risk. As a direct result of Life Time's negligence, Mr. Kinney sustained significant personal injuries and other damages for which Life Time is undoubtedly liable.

## 2. INJURIES & TREATMENTS

### 2.1. Summary of Injuries

We have enclosed all pertinent medical information regarding Mr. Kinney's injuries. These injuries were suffered as a direct and proximate result of this incident. The chart below represents a non-exhaustive summary of the injuries sustained by our client:

| ICD Code | Description |
|---|---|
| J68.0 | Bronchitis and Pneumonitis Due to Chemicals, Gases, Fumes and Vapors |
| T59.94XA | Toxic Effect of Unspecified Gases, Fumes and Vapors, Undetermined |

### 2.2. Treatment

| Orland Park Fire Protection | |
|---|---|
| Timeline | May 3, 2023 |
| No. Visits | 1 |

4

CorVel Corporation
Jeff Champagne
Page 5

| | |
|---|---|
| Summary | • On May 3, 2023, emergency medical services (EMS) was dispatched to the scene of the incident. Upon arrival, EMS personnel found Mr. Kinney lying down. Mr. Kinney complained of dizziness, coughing, chest pressure, and an irritated throat and chest. After a medical examination, EMS personnel determined that Mr. Kinney required additional treatment and care and transported Mr. Kinney to Silver Cross Hospital. During transport, Mr. Kinney was fitted with an oxygen mask. |
| Documents | • Exhibit 5 - Orland Park Fire Protection - Records |

## Silver Cross Hospital

| | |
|---|---|
| Timeline | May 3, 2023 - May 4, 2023 |
| No. Visits | 1 |
| Summary | • On May 3, 2024, Mr. Kinney was presented to the emergency room via ambulance for emergent treatment and care. Upon arrival, Mr. Kinney complained of burning in his throat and pressure in his chest. The attending emergency physician ordered a CT of Mr. Kinney's chest, which revealed, in relevant part, the following:<br><br>   o **CT of the Chest**:<br>      ■ Left greater than right patchy lower lobe opacities worrisome for multifocal aspiration or infection.<br>      ■ Right hilar enlarged lymph node.<br>   o **X-ray of the Chest**:<br>      ■ Vascular congestion without focal consolidation.<br><br>• After completing a physical examination and reviewing the results of Mr. Kinney's diagnostic imaging, the attending emergency physician diagnosed Mr. Kinney with **chemical pneumonitis** and discharged Mr. Kinney with a prescription for Prednisone and recommended he follow up with his primary care physician in one week. |
| Documents | • Exhibit 1 - Silver Cross Hospital - Bills<br>• Exhibit 6 - Silver Cross Hospital - Records |

## Park Primary Care

| | |
|---|---|
| Timeline | May 6, 2023 - June 8, 2023 |
| No. Visits | 3 |

CorVel Corporation
Jeff Champagne
Page 6

Summary
- On May 6, 2023, Mr. Kinney presented to for medical treatment and care. Upon arrival, Mr. Kinney complained of chest tightness. After a clinical examination, a CT of Chest with Contrast for Pulmonary Embolism was ordered diagnostic imaging which revealed, in relevant part, the following:
  - **X-ray of the Chest**:
    - Blunting of the costophrenic angles bilaterally, which could be related to slight lung hyperinflation versus small pleural effusions.
    - Patchy left basilar densities.
- After completing a physical examination, it was recommended that Mr. Kinney follow up in a few days.

- On May 9, 2023, Mr. Kinney presented for medical treatment and care. Upon arrival, Mr. Kinney complained of a cough. After completing a physical examination, it was recommended that Mr. Kinney follow up in one month.

- On June 8, 2023, Mr. Kinney presented for medical treatment and care. Upon arrival, Mr. Kinney complained of a cough. After completing a physical examination, the provider ordered an X-ray of Mr. Kinney's chest, which revealed no acute findings. It recommended that Mr. Kinney follow up in two weeks.

Documents
- Exhibit 4 - Park Primary Care - Bills
- Exhibit 7 - Park Primary Care - Records

## 3. DAMAGES

### 3.1. Total Projected Claim Value

| Elements of Damages | |
|---|---|
| **Economic Damages** | |
| Past Medical Expenses | $21,861.69 |
| Future Medical Expenses | $165.00 |
| **Non-Economic Damages** | |

CorVel Corporation
Jeff Champagne
Page 7

| | |
|---|---|
| Past and Future Pain and Suffering | $100,000.00 |
| **Total Damages** | **$122,026.69** |

### 3.2. Past Medical Expenses

To date, Mr. Kinney has incurred medical costs as itemized below:

| Provider | Treatment Period | Amount Charged | Supporting Document(s) |
|---|---|---|---|
| Orland Park Fire Protection | 5/3/2023 | $3,635.69 | |
| Silver Cross Hospital | 5/3/2023 – 5/4/2023 | $15,114.00 | Exhibit 1 |
| EM Strategies | 5/3/2023 | $2,072.00 | Exhibit 2 |
| Heart Centers of Illinois | 5/4/2023 | $300.00 | Exhibit 3 |
| Park Primary Care | 5/6/2023 – 6/8/2023 | $740.00 | Exhibit 4 |
| **Total** | | **$21,861.69** | |

In its June 2008 decision in *Wills v. Foster*, the Illinois Supreme Court adopted the "reasonable value" approach to the collateral source rule. 229 Ill. 2d 393, 418, 892 N.E.2d 1018, 1033 (2008). This means a prevailing personal injury plaintiff can recover the reasonable value of medical services she received, even when that exceeds the amount actually paid by a collateral source, such as insurance or Medicare. *Id.* Under the rule's rationale, the court reasoned, the tortfeasor should remain liable for the "reasonable value" of all the harm he/she/it causes, regardless of discounts received from any third party, whether "bargained-for" or not. *Id.* at 407, 892 N.E.2d at 1026; see *Verci v. High*, 2019 IL App (3d) 190106-B, ¶ 19, 161 N.E.3d 249, 254 ("Under the reasonable-value approach, the plaintiff may place the entire billed amount into evidence, provided that the plaintiff also establishes the bill's reasonableness."). In adopting an across-the-board "reasonable value" approach, the *Wills* Court rejected defense arguments that allowing recovery beyond amounts actually paid would transform compensatory damages into punitive damages and give a windfall to plaintiffs. *Wills* at 411, 892 N.E.2d at 1029. The court reasoned that the benefits of the relationship between the plaintiff and the collateral source were all intended to flow to the injured party, not the tortfeasor. *Id.* at 413, 892 N.E.2d at 1030.

CorVel Corporation
Jeff Champagne
Page 8

"In order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature." *Arthur v. Catour*, 216 Ill. 2d 72, 81-82, 833 N.E.2d 847, 853 (2005) (when evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that the bill has been paid, the bill is *prima facie* reasonable in a personal injury suit).

If you claim that any of Mr. Kinney's medical treatment was unnecessary or that any of the bills related to his treatment were unreasonable, please identify in writing which bills you dispute and the factual basis for such dispute. If you dispute them with a qualified expert opinion from a doctor willing to testify, then please provide us with a copy of his or her report. If not, please confirm in writing that you dispute the bills as a claims adjuster and/or administrator and not as a qualified medical professional. If you do not respond in writing as requested, we will assume that you do not dispute the necessity of Mr. Kinney's medical treatment, nor the reasonableness and amount of his medical bills set forth within this demand package.

### 3.3.    Future Medical Expenses

Mr. Kinney continues to experience pain and symptomatology as a result of the injuries he sustained in the incident at issue and will require additional treatment moving forward, as identified below.

| Procedure | Years | Per Year | Cost | Total |
|---|---|---|---|---|
| Primary Care Physician Visit[1] | 1 | 1 | $165.00 | $165.00 |
| **Total** | | | | **$165.00** |

*Note that the costs of healthcare and medication will continue to rise significantly, and we reserve the right to revise our projection of future medicals on this basis, among others. We also note that this estimate is only for one year and could readily be augmented for additional years of healthcare and medication.*

### 3.4.    Past and Future Pain & Suffering

There is no question that the May 3, 2023, incident caused Mr. Kinney a great deal of physical and emotional pain and suffering. As a result of the incident, Mr. Kinney suffered serious injuries that

---

[1] Exhibit 4 - Park Primary Care - Bills

CorVel Corporation
Jeff Champagne
Page 9

affected, and continue to affect, his quality of life. Mr. Kinney experienced difficulty and pain when trying to complete simple daily activities that he used to be able to complete with ease prior to the May 3, 2023, incident. To this day, Mr. Kinney continues to experience pain and discomfort as a result of the May 3, 2023, incident at issue. Mr. Kinney went through an undoubtedly traumatic experience, which caused Mr. Kinney to have difficulty breathing, made him light-headed, and damaged his lungs and bronchial tubes. As a result of the incident, Mr. Kinney will now be more cautious and anxious around pools for the rest of his life.

Mr. Kinney's pain and suffering as a result of the May 3, 2023, incident should remain at the forefront of your consideration as you evaluate his significant noneconomic damages.

### Verdict Analysis

Based on case results with similar facts, we assert that Mr. Kinney is entitled to, at least, past and future pain and suffering damages in the amount of **$100,000.00**. As justification for this claim, we direct your attention to the following:

| *Bonds, Jr. v. L-D Springfield Hotel Inc.; Destination Hotels and Resorts Inc.; Lowe Enterprises Inc., A Foreign Corporation* | |
|---|---|
| Citation | 2002 WL 34408332J |
| Jurisdiction | Illinois |
| Award | $90,000.00 (*$156,733.65 adjusted for inflation*)[2] |
| Case Facts | A male technical support analyst suffered injuries when fumes were released into the air from the swimming pool area of a hotel, owned by the defendants, where he was a guest. The plaintiff contended that the defendants negligently allowed dangerous fumes to be circulated through the air of the hotel, failed to properly maintain the swimming pool area, failed to keep guests outside the building and failed to inform and warn of a known dangerous condition. |
| Injuries | Lung damage resulting in respiratory dysfunction. |

In both instances, the plaintiff above and Mr. Kinney suffered painful and significant personal injuries and damages as a result of the reckless, careless, or otherwise negligent conduct of a liable tortfeasor. Therefore, we find that this verdict represents a strong benchmark for estimating the minimum amount of compensation a similarly situated jury would award Mr. Kinney today.

---

[2] Adjusted for inflation, a verdict of $90,000.00 in 2002 is equal or otherwise approximate to a present value of $156,733.65 based on the Bureau of Labor and Statistics CPI rate of inflation.

CorVel Corporation
Jeff Champagne
Page 10

## Non-Economic Damages - Pain and Suffering

Our fair and reasonable valuation of Mr. Kinney's claim for past, present, and future pain and suffering is valued at **$100,000.00**. This conservative valuation is based upon the well-documented physical and emotional injuries that Mr. Kinney sustained as a direct and proximate result of the May 3, 2023, incident, and is likewise supported by the foregoing verdict analysis, which clearly indicates that our valuation is reasonable and calculated in good faith in order to resolve Mr. Kinney's claim. Of course, this amount would be in addition to Mr. Kinney's other damages. Still, it is evident that a jury will not hesitate to award Mr. Kinney a substantially higher amount of noneconomic damages should this claim proceed to trial. This fact should remain at the forefront of your consideration as you evaluate Mr. Kinney's significant noneconomic damages.

To be crystal clear, this offer is made solely for the purpose of an expedient settlement and does not take into consideration any continued pain and suffering by Mr. Kinney, which may last longer than one year and which will be worth more than **$100,000.00**. Therefore, our conservative valuation of **$100,000.00** could readily be augmented, and we reserve the right to do so.

## 4. DEMAND TO SETTLE

Based on the liability and damages, we demand you tender a release in the amount of **122,026.69** within 30 days. This demand for settlement should include everything needed to properly evaluate our client's claim for damages. Please note well, if settlement is not reached and a lawsuit is filed, all prior demands are withdrawn.

As you know, Illinois law allows pre-judgment interest at the rate of six percent (6%). We are willing to accept our demand amount within thirty (30) days. Should this case proceed to litigation, our demand for settlement will increase as time passes, due to accumulating interest. In light of this, our demand for settlement is entirely reasonable.

Thank you for your prompt attention to this matter.

Plaintiff reserves the right to structure all or a portion of any settlement of this matter. The Defendants agree to cooperate by participating in a Qualified Structured Settlement including the execution of a Settlement and Release document and the execution of a Qualified Assignment and Release (QAR) in accordance with the governing tax codes. The Plaintiff reserves the right to choose and work with their own structure broker.

CorVel Corporation
Jeff Champagne
Page 11

Sincerely,

Casey T. Kingsley, Esq.
Attorney at Law

**This letter is for settlement purposes only and not admissible for any reason.**

11